IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PHILLIP CURTIS COLLICOTT             3:12-CV-01504-BR
also known as PHILLIP C.
COLLICOTT,            OPINION AND ORDER

       Plaintiff,

v.

MAX WILLIAMS, Director of
D.O.C.; MR. NOOTH; MR. GEER;
BUSINESS OFFICE;
ADMINISTRATION; MAIL ROOM,

       Defendants.


**PHILLIP CURTIS COLLICOTT**
#18822244
Snake River Correctional Institution
777 Stanton Blvd
Ontario, OR 97914-8335

       Plaintiff, *Pro Se*

**ELLEN ROSENBLUM**
Attorney General
**SHANNON M. VINCENT**
Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301
(503) 947-4700

       Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

    This matter comes before the Court on Defendants' Unenumerated Rule 12(b) Motion (#39-1) to Dismiss for Failure to Exhaust and Motion (#39-2) for Summary Judgment. For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claim related to the Inmate Welfare Fund for failure to exhaust and **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claim for denial of *Prison Profiteers*.


## BACKGROUND

    On August 20, 2012, Plaintiff Phillip Curtis Callicott filed a Complaint in this Court pursuant to 42 U.S.C. § 1983 in which he alleges Defendants violated his rights under the Fifth and First Amendments as well as the Due Process Clause of the United States Constitution because (1) they do not provide inmates with "notice of the amount of money in the Inmate [Welfare] Fund and where it's spent" and (2) at some point they "denied" Plaintiff the book *Prison Profiteers*.

    On September 19, 2013, Defendants filed an Unenumerated Rule 12(b) Motion to Dismiss for Failure to Exhaust and a Motion for Summary Judgment in which Defendants seek dismissal of Plaintiff's claim related to the Inmate Welfare Fund (IWF) for failure to exhaust and summary judgment on Plaintiff's claim

2 - OPINION AND ORDER

related to the denial of *Prison Profiteers*. The Court took this matter under advisement on December 13, 2013.

**DEFENDANTS' MOTION TO DISMISS**

**I.   Standard**

In the Ninth Circuit failure to exhaust administrative remedies "should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). To decide a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20.

Unlike summary judgment, dismissal for failure to exhaust administrative remedies is not a decision on the merits. *Id.* "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

**II.  Inmate Welfare Fund**

At some point the Oregon Department of Corrections (ODOC) established the Inmate Welfare Fund (IWF) account with the Oregon State Treasurer pursuant to Oregon Revised Statute § 421.068. The IWF provides funds to benefit ODOC's general-inmate population and to enhance inmate activities and programs, including educational programs. Funding sources for the IWF

3 - OPINION AND ORDER

include ODOC facility commissary operations, commissions from the inmate telephone contract vendor, vending machines in visiting areas of ODOC institutions, funds confiscated through the disciplinary process, and donated funds.

Prior to 2013 ODOC distributed IWF using a two-tier process. IWF funds first were distributed so as "to cover [the ODOC] approved budget for Community Corrections, Transition & Release, and Inmate phones." Decl. of Steve Robbins at ¶ 5. ODOC distributed any remaining funds "based on a percentage to [alcohol and drug programs], education programs, and each ODOC institution." Robbins Decl. at ¶ 6.

After July 2013 ODOC began to distribute IWF funds using "a one-tier process based on need." Robbins Decl. at ¶ 7. Currently ODOC allocates IWF funds "across a variety of treatment and education programs, as well as a portion going to ODOC institutions statewide. The ODOC institutions decide how to spend their allocation of the IWF distribution." Robbins Decl. at ¶ 7.

Snake River Correctional Institution (SRCI) does not conduct fundraisers for the IWF, and neither ODOC nor SRCI make any accounting to the inmate population as to how IWF funds are managed. Robbins Decl. at ¶ 8. "Inmates have no role in the IWF, nor do they receive any information on how [the IWF] is managed." Robbins Decl. at ¶ 9.

4 - OPINION AND ORDER

**III. Prison Litigation Reform Act (PLRA) Exhaustion Requirement**

As noted, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 creates a private right of action against persons who, acting under color of state law, violate federal constitutional or statutory rights. *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir. 2001). The PLRA was amended to provide: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandated regardless of the relief offered through the prison administrative procedures. *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 1825 (2001).

The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, the Supreme Court held in *Booth* that prisoners are

5 - OPINION AND ORDER

obligated to navigate the prison's administrative review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."  532 U.S. at 739-41. Accordingly, the Ninth Circuit has held "plaintiffs must pursue a remedy through a prison grievance process as long as *some* action can be ordered in response to the complaint."  *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005)(emphasis in original).  Even if the relief the prisoner receives is nothing more than "corrective action taken in response to an inmate's grievance [that] . . . improve[s] prison administration and satisf[ies] the inmate," it is sufficient relief for an inmate to continue with the administrative process.  *Id*. at 936 (quoting *Porter*, 534 U.S. at 525).

Exhaustion of administrative remedies under 42 U.S.C. § 1997e(e) is an affirmative defense.  *Wyatt*, 280 F.3d at 1245. "[D]efendants have the burden of raising and proving the absence of exhaustion."  *Id*. at 1120.

> Relevant evidence in so demonstrating would include . . . regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case.

*Brown*, 422 F.3d at 937.  As noted, if the court concludes an inmate has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.  *Wyatt*, 315 F.3d at 1119-20.

6 - OPINION AND ORDER

**IV. Analysis**

Defendants assert Plaintiff had administrative remedies available for his claim related to the IWF, but Plaintiff did not exhaust them. Defendants assert Plaintiff also has not established administrative remedies were "effectively unavailable." Defendants, therefore, contend the Court should dismiss Plaintiff's IWF claim.

In his Response Plaintiff sets out his efforts to grieve his IWF claim. According to Plaintiff's timeline, he filed this action on August 1, 2012, but he did not submit a grievance related to his IWF claim until April 9, 2013. The Ninth Circuit has held "when [a] plaintiff did not exhaust his administrative remedies prior to filing suit but is in the process of doing so when a motion to dismiss is filed," the district court is "required by 42 U.S.C. § 1997e(a) to dismiss the complaint without prejudice." *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). *See also Young v. Cal. Dep't of Corr. and Rehab.*, No. 12-16491, 2014 WL 23777, at *1 (9th Cir. Jan. 2, 2014)("The district court properly dismissed Young's retaliation claim against defendant Barron because Young failed properly to exhaust his administrative remedies against this defendant prior to filing suit and failed to demonstrate that administrative remedies were effectively unavailable to him."). The Ninth Circuit explained in *McKinney*:

7 - OPINION AND ORDER

> While it is true that requiring dismissal may, in some circumstances, occasion the expenditure of additional resources on the part of the parties and the court, it seems apparent that Congress has made a policy judgment that this concern is outweighed by the advantages of requiring exhaustion prior to the filing of suit. The objectives that Congress sought to achieve in enacting § 1997e(a) were identified by the Supreme Court in *Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S. Ct. 983, 152 L. Ed.2d 12 (2002):
>
>> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *Booth*, 532 U.S. at 737, 121 S. Ct. 1819. In other instances, the internal review might "filter out some frivolous claims." *Ibid*. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. *See ibid.; see also Madigan*, 503 U.S. at 146, 112 S. Ct. 1081.
>
> Requiring dismissal without prejudice when there is no presuit exhaustion provides a strong incentive that will further these Congressional objectives; permitting exhaustion *pendente lite* will inevitably undermine attainment of them.

*Id*. at 1200-01.

As noted, Plaintiff filed this action that included his claim related to the IWF before he exhausted his administrative remedies as to that claim. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's IWF claim for failure

8 - OPINION AND ORDER

to exhaust administrative remedies and dismisses that claim without prejudice.

### **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges Defendants violated his rights under the First Amendment when they "denied" Plaintiff the book *Prison Profiteers*.

Defendants move for summary judgment on Plaintiff's First Amendment claim on the ground that Plaintiff has not established Defendants impermissibly infringed on his right to free speech when they denied Plaintiff *Prison Profiteers*.

**II.  Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*.  "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re*

*Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the

10 - OPINION AND ORDER

resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

### III. Analysis

"Prisoners 'do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" *Shakur v. Schriro*, 514 F.3d 878, 883 (9th Cir. 2008)(quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). A prison inmate "'retains those First Amendment rights that are not 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Ashker v. Cal. Dep't of Corr.*, 350 F.3d 917, 922 (9th Cir. 2003)(quoting *Hargis v. Foster*, 312 F.3d 404, 409 (9th Cir. 2002). "Lawful incarceration[, however,] brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quotation omitted). Thus, to establish a violation of free speech, a prisoner must show his constitutional rights were burdened without any justification reasonably related to legitimate penological interests. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001)(citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Defendants do not appear to dispute their denial of *Prison Profiteers* to Plaintiff, based on its content, implicates Plaintiff's rights under the First Amendment. As noted, however, Defendants contend the denial was based on an ODOC regulation

11 - OPINION AND ORDER

that is reasonably related to legitimate penological interests, and, therefore, they did not violate Plaintiff's First Amendment rights.

If a prison regulation impinges on an inmate's constitutional rights, "'the regulation is valid if it is reasonably related to legitimate penological interests.'" *Shakur*, 514 F.3d at 884 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The Supreme Court set out four factors in *Turner* that must be weighed when determining whether a prison regulation is reasonably related to legitimate penological interests:

> (1) [w]hether there is a "valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
>
> (2) [w]hether there are "alternative means of exercising the right that remain open to prison inmates";
>
> (3) [w]hether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and
>
> (4) [w]hether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

482 U.S. at 89-90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

    **A.    First *Turner* Factor.**

The first *Turner* factor "requires [the Court] to

12 - OPINION AND ORDER

determine whether there was a legitimate penological interest that is rationally related to the disputed regulation." *Shakur*, 514 F.3d at 885 (citing *Turner*, 482 U.S. at 89).

Defendants point out that under Oregon Administrative Rule 291-131-0035(2)(j) inmates are not permitted to receive through the mail items that contain "inflammatory" material. Rule 291-131-0010(9) defines inflammatory material as

> [m]aterial whose presence in the facility is deemed by the department to constitute a direct and immediate threat to the security, safety, health, good order, or discipline of the facility because it incites or advocates physical violence against others.

Defendants note ODOC officials included *Prison Profiteers* in a list of publications banned in ODOC facilities because it contains "inflammatory materials and some inflammatory comments about the Oregon Person [*sic*] Blues Clothing Line." Decl. of Randy Geer at ¶ 9. Defendants point to a memorandum from Geer listing "rejected publications" that includes *Prison Profiteers* and contains a notation that "[i]t contains inflammatory materials. Page 102 has some inflammatory comments about Oregon Prison Blues Clothing Line along with pages [*sic*] 108." Geer Decl., Ex. 3 at 1. Plaintiff, however asserts *Prison Profiteers* "talks about the money being made from mass incarceration, and the Oregon Prison Blues Clothing Line." Compl. at 5.

As one court noted:

> There is no doubt that publications and documents

13 - OPINION AND ORDER

> that advocate violence or are so racially inflammatory so as to potentially lead to violence in the prison can be constitutionally prohibited on the ground that it is rationally related to a legitimate governmental interest. While prison officials may well be within their discretion to ban possession of those materials in the prison, it is defendant's burden to demonstrate a non-conclusory connection between the materials confiscated and any legitimate concerns.

*Avery v. Thompson*, No. C 03-4233 RMW (PR), 2011 WL 2532364, at *4 (N.D. Cal. June 24, 2011).

Here Defendants did not set out any particular facts or analyses of the contents of the book that establish it contains information that constitutes a direct and immediate threat to the security, safety, health, good order, or discipline of the facility by inciting or advocating physical violence against others. The presence of such allegedly inflammatory material is not immediately obvious from the title of the book nor from the unilluminating excerpt attached to Geer's Declaration. Accordingly, Defendants have not produced the kind of evidence sufficient to meet their burden to demonstrate a nonconclusory connection between the book and Defendants' legitimate penological concerns. *Compare Harper v. Wallingford*, 877 F.2d 728, 732-33 (9th Cir. 1989)(affirming summary judgment when the prison superintendent stated in his affidavit that the challenged materials could lead to violence and explained why the possession of such materials could lead to a security threat); *Singer v. Raemisch*, 593 F.3d 529, 536 (7th Cir. 2010)(affirming summary

14 - OPINION AND ORDER

judgment regarding confiscation of "D & D" game-related materials when prison officials explained how the "D & D" game mimicked gang behavior); *Mayfield v. Texas Dep't of Crim. Justice*, 529 F.3d 599, 610-11 (5th Cir. 2008)(finding the confiscation of runestones was rationally related to a legitimate penological interest when the defendant proffered several reasons to support its determination); *Stefanow v. McFadden*, 103 F.3d 1466, 1473 (9th Cir. 1996)(deferring to prison authorities' concern that a book that included a "call to arms" for white Christians to "fight back" was so inflammatory that it would reasonably incite violence in the institution); *with McCabe v. Arave*, 827 F.2d 634, 636, 638 (9th Cir. 1987)(finding a total ban on storing Church Jesus Christ Christian literature was improper even though it encouraged racial hatred and revenge because there was not any evidence that the literature advocated "violence or illegal activity as a means of achieving this goal, and [was] not so racially inflammatory as to be reasonably likely to cause violence at the prison.").

It is not possible on this record for the Court to determine whether Defendants' decision to ban *Prison Profiteers* is based on a legitimate penological concern in any nonconclusory fashion. The Court, therefore, concludes Plaintiff has established a genuine dispute of material fact exists as to whether there is a nonconclusory connection between the book and

15 - OPINION AND ORDER

Defendants' legitimate penological concerns.

    B.    **Second *Turner* Factor**

The second *Turner* factor "requires [the Court] to determine whether there are "alternative means of exercising the right that remain open to prison inmates." It is undisputed that inmates, including Plaintiff, are permitted to receive a wide range of publications that "criticize[] the operation, programs or personnel of the Department of Corrections" as long as those publications are not deemed by ODOC to constitute a direct and immediate threat to the security, safety, health, good order, or discipline of the facilities. Or. Rev. Stat. § 291—131-0010(9).

Accordingly, the Court concludes this factor weighs in favor of Defendants.

    C.    **Third *Turner* Factor**

The third *Turner* factor "requires [the Court] to determine whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally." Defendants point out that ODOC authorities "saw and continue to see serious security and safety risks in accommodating plaintiff's request for the publication *Prison Profiteers*. In essence, inflammatory language of the sort contained in the materials is a threat to prison security because it is divisive and a threat to the good order of the facilities." Geer Decl. at ¶ 9. As noted, however,

16 - OPINION AND ORDER

Defendants' assertions are little more than conclusory statements without evidentiary support in the record. Accordingly, Defendants have not established on this record that failure to ban *Prison Profiteers* would "impact . . . guards and other inmates, and . . . the allocation of prison resources generally."

On this record the Court concludes there is a genuine dispute of material fact as to whether the failure to ban *Prison Profiteers* would impact guards and other inmates or the allocation of prison resources.

      **D.**    **Fourth *Turner* Factor**

The fourth *Turner* factor requires the Court to determine whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives." Defendants assert "ODOC has conducted a review of *Prison Profiteers*, pursuant to the administrative rules, and it has determined that the publication should not be permitted to enter ODOC facilities." Defendants point out that "Plaintiff has presented no 'obvious, easy alternative,' rather than to allow the inflammatory materials into prisons." The Court, however, has concluded Defendants have not met their burden to establish the materials are inflammatory and properly banned from ODOC's facilities. Accordingly, the Court also cannot determine on this record whether there are other alternatives to banning *Prison Profiteers*.

17 - OPINION AND ORDER

In summary, the Court concludes on this record that Defendants have not established the ban on *Prison Profiteers* is rationally related to a legitimate penological goal and genuine disputes of material fact exist as to at least two of the *Turner* factors. Accordingly, the Court denies Defendants' Motion for Summary Judgment on Plaintiff's First Amendment Claim.

## IV.  Qualified Immunity

Defendants assert even if they violated Plaintiff's First Amendment rights, they are entitled to qualified immunity.

"Generally officers performing discretionary duties have qualified immunity, which shields them 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077 (9th Cir. 2003)(quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

In *Saucier v. Katz* the Supreme Court held a court that is evaluating a defense of qualified immunity must first "determine whether--resolving all disputes of fact and credibility in favor of the party asserting the injury--the facts adduced at summary

18 - OPINION AND ORDER

judgment show that the officer's conduct violated a constitutional right" before the court determined "whether, at the time of the violation, the constitutional right was 'clearly established.'"  533 U.S. 194, 201 (2001).  *See also Pearson v. Callahan*, 129 S. Ct. 808, 812 (2009).

The Court has concluded genuine disputes of material fact exist as to whether Defendants violated Plaintiff's First Amendment rights.  Because these issues of fact are inextricably intertwined with the issue of qualified immunity, the Court declines to conclude that Defendants are entitled to qualified immunity as to Plaintiff's First Amendment claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Unenumerated Rule 12(b) Motion (#39-1) to Dismiss for Failure to Exhaust as to Plaintiff's claim related to the Inmate Welfare Fund and **DISMISSES** that claim **without prejudice**.  If Plaintiff wishes to pursue his claim related to the Inmate Welfare Fund after he has exhausted his administrative remedies as to that claim, Plaintiff must file a new action to do so.  The Court also **DENIES** Defendants' Motion (#39-2) for Summary Judgment.

Accordingly, this matter will proceed only as to Plaintiff's First Amendment claim related to denial of *Prison Profiteers*. The Court **DIRECTS** defense counsel to file a proposed case management

19 - OPINION AND ORDER

plan as to that claim **no later than February 14, 2014,** in which counsel proposes a schedule for resolution of Plaintiff's First Amendment claim.  The Court encourages counsel to confer with Plaintiff about this issue before submitting the proposal.  The Court will set a Rule 16 conference with the parties thereafter.

    IT IS SO ORDERED.

    DATED this 31st day of January, 2014.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

20 - OPINION AND ORDER